Estate of Sonya Denise Phillips   §
by Carolyn Phillips, mother   §
next friend and custodian of   §
decedent Sonya Phillips' minor   §
children: Shumai'kee Phillips   §
Tashanti Phillips, and Tahiji Phillips   §
  §
    Plaintiffs,   §
  §
v.   §   No.: 3:00-CV-692 (630)
  §   Judge Phillips
Roane County, David Haggard,   §
Sheriff of Roane County, in his   §
official capacity only and Fay Hall   §
head jailer in Roane County, in both   §
official and individual capacities, et al   §
  §
    Defendants.   §

## ORDER

The matter before the Court involves a § 1983 claim of deliberate indifference to a

serious medical need, as well as state claims including negligence and medical

malpractice. Defendant Roane County jailers/correctional officers, Roane County E.M.T.s,

governmental supervisors, and government employers, have collectively filed a motion for

summary judgement [Doc. 153]. Additionally, Thomas Boduch, M.D. moves the Court for

summary judgment [Doc.s 149 and 176]. Plaintiffs have responded, and the defendants

have replied. For the reasons that follow, defendants' motions [Doc.s 153, 149, and 176]

are **GRANTED in part** with respect to plaintiffs' claims alleging violations of the Eighth

Amendment, and **DENIED in part** with respect to the remaining claims.

I.    **Background**


    A.    Factual background


    As the law requires, all disputed facts and inferences are resolved most favorably for the plaintiffs, and the Court merely provides an abridged summary of facts for the purposes of this opinion.


    On December 9, 1999, Sonya Denise Phillips ("Phillips") arrived at Roane County Jail hyperventilating and was treated by Dr. Thomas Boduch ("Dr. Boduch").[1]  As ordered by Dr. Boduch, Phillips was transported to Roane County Medical Center for treatment.  Thereafter, she was transferred to Lakeshore Mental Health Institute, returned to Roane County Medical Center, was sent back to Lakeshore, and was then released on January 10, 2000 with medications including Zoloft, Klonopin, and Zyrprexa.  Shortly thereafter, Phillips began receiving treatment as an inpatient.


    On February 23, 2000, Phillips was charged with the first degree murder of her infant child and incarcerated in the Loudon County Jail.  On October 3, 2000, Phillips was transferred to the Roane County Jail, located in Kingston, Tennessee.  She was under the care of the Helen Ross McNabb Center.   In early March, she began treatment at

_____

[1]Dr. Boduch is a contract doctor with the Roane County Jail.  He answers medical requests and regularly sees patients on Wednesdays at the jail.  If there is an emergency, he will make a special trip to the jail.

Ridgeview.  On March 10, 2000, March 29, 2000, April 3, 2000, May 11, 2000, and May 24, 2000, she met with Ridgeview doctors for scheduled appointments.  She was seen again on June 20, 2000 with an elevated serum glucose level of 130 (normal range is 65 to 109).  While she continued to be seen at Ridgeview, she was also seen by P.A. Joann Gardner who was employed by the Roane County Sheriff's Department.

On November 24, 2000, Phillips was found unresponsive with no pulse or respiration by jail personnel.  An E.M.T. from Roane County Ambulance Service provided treatment at the jail, but Phillips was not transported to the emergency room.  Plaintiffs assert that Phillips should have been transported to a medical facility in accordance with emergency protocol for a serious medical condition.  It appears that Captain Faye Hall ("Hall") told the E.M.T. to leave Phillips at the jail if it appeared that Phillips was not in distress.  The E.M.T. instructed the jailors to watch Phillips and call back if needed.  Phillips was then placed in a holding cell for medical observation.  A fellow inmate indicated that, after Phillips' episode, her skin color appeared almost purplish; that Phillips could not open her eyes; and that Phillips appeared very swollen.[2]  Dr. Boduch was not present on the 24th, but he was advised of the situation shortly thereafter.

Phillips continued to be severely ill for the next several days.  The daily log indicates

_____

[2]This inmate also stated that she clothed and helped to bathe Phillps because Phillips could not do these things on her own.  The inmate also stated that Phillips would "go out" all the time and several times Phillips stated to the inmate, "Please don't let me die in here."  Another inmate, who was a respiratory therapist, indicated that Phillips had a "death rattle" in her airwarys and advised the jailers to help Phillips in receiving medical treatment.  The inmate states that her requests for Phillips fell on deaf ears.

that on November 26, 2000, Phillips complained of chest pains, and on November 27, 2000, Phillips filled out a medical request complaining of chest pains, numbness (left side, arms, and legs), dizziness, jaw aching, and constant headaches. The log records indicate that she complained to the jailors of dizziness on the 27th of November as well. During this time, other inmates observed the ailing health of Phillips and assisted Phillips with caring for herself. On November 29, 2000, she was seen by Dr. Boduch for 6 minutes.[3] This was the only time that Dr. Boduch was in direct contact with Phillips. At that time, defendants state that Phillips reported that all prior symptoms had disappeared, and she was prescribed Ibuprofen for knee pain. According to a fellow inmate, Dr. Boduch "did not run any test, and failed to even touch her." The inmate observed that Phillips returned emotional and in tears. Further, an inmate overheard Captain Hall state that Phillips was more trouble than she was worth. On November 30, 2000, Phillips was seen by Ridgeview and prescribed Depakote - 500 grams, 3 times daily; Zoloft - 100 milligrams, 2 time daily; Zyprexa - 15 milligrams, 2 times daily; Klonopin - .5 milligrams, once daily; and B.I.D. once daily.

Phillips' condition continued to worsen, including worsening symptoms of chest pains and nausea. She began vomiting more often and passing out. At some point, Phillips began vomiting what appeared to be blood. One inmate indicated that she believed Phillips to be vomiting feces. Inmates would advise the jailors of the situation and that Phillips

---

[3]In responding to Dr. Boduch's motion for summary judgement, the plaintiffs attack the little or no records that Dr. Boduch kept in connection with Phillips. Apparently, at the 6 minute November 29th doctor's visit, Dr. Boduch merely scribbled down "Ibuprofen " and little or nothing else.

needed to be transported to a medical facility, but no direct action would be taken.

On December 4, 2000, Phillips filled out another medical request stating that she was experiencing nausea, constipation, and a possible kidney infection. In response, Dr. Boduch came to the jail on December 6, 2000, consistent with his regular Wednesday visit to the jail; however, Phillips had been transported to a previously scheduled appointment at Ridgeview. In Phillips' absence, Dr. Boduch prescribed antibiotics and ordered a urinalysis. Plaintiffs claim that Dr. Boduch did not follow up with the urinalysis, which would have disclosed Phillips' medical condition. Dr. Boduch did not have any further contact with Phillips. Also, while at Ridgeview, Phillips was scheduled for another appointment on the 12th of December, 2000.

On December 6, 2000, Phillips was placed in a holding cell for closer observation. Phillips continued to vomit, experience nausea, as well as feel an increasing pain in her chest. To verify these symptoms, the jailers turned off the water in the holding cell so that she could not flush the toilet.

On the morning of December 8, 2000, Phillips began calling for help and was found lying on the cell floor with blood coming from her mouth. It appears that Phillips had fallen and injured her lip. Two jailors were needed to assist Phillips to her seat. Later that day at approximately 3:00 p.m., Captain Hall contacted Ridgeview to inquire into whether Phillips was overly medicated, since Phillips had recently appeared to be dizzy, lethargic with slurred speech, and nauseous. In response, Ridgeview directed a low dosage of

Zyprexa to be given to Phillips.  At approximately 5:20 p.m., Phillips was found again unresponsive; however, the corrections officers were unable to revive her.  She was transported to Roane County Medical Center and pronounced dead at 6:21 p.m.  The cause of death was determined to be diabetes-ketoacidosis, or untreated diabetes.[4]

      B.    <u>Procedural background</u>

Plaintiffs' original complaint was filed on December 20, 2000, against Roane County, David Haggard (Sheriff of Roane County), and Captain Hall (head jailer in Roane County). Plaintiffs alleged violations of § 1983 for deliberate indifference to Phillips' medical needs, wrongful death under Tenn. Code Ann. § 20-5-113, negligence, negligent supervision and training, and loss of consortium.  The complaint was amended to add Ken Yager (Roane County Executive); Linda Mayes, John Mayes, Kelly Jackson, Cathy Gross, Thomas Pio, Sandra Miller, Stacey (Stacee) French, Lynda Carter, Stephen Halcomb, Deborah Gibson, Josh Rumer (Rymer),[5] Jesse (Matthew) Rittenhouse, Thomas Melton, Corrections Officer Belcher (all jailers in Roane County); Ambulance Service of Roane County (ASRC), Gloria Wright, Howie Rose, Duranda Tipton (employees of ASRC); and Dr. Boduch (Roane County medical doctor).  The amended complaint added a claim for violation of the Eighth

---

[4]One eye witness, Patrick Cooley, an attorney located in Kingston, Tennessee, was at the jail on the 8th of December.  He heard an unidentified corrections officer telling defendant Hall that he/she was trying to give Phillips medicine but that "she is acting like she is sick again."  Mr. Cooley indicated that the tone of the corrections officer's voice indicated deliberate indifference and that defendant Hall responded in a tone conveying no emergency or real need to give medical treatment to Phillips.

[5]Josh Rumer (Rymer) is not included in defendants' motion for summary judgment with the other corrections officers/jailers.

Amendment's prohibition against "cruel and unusual punishment" and a medical malpractice claim against Dr. Boduch.  Dr. Robert Dukes was also added as a defendant to the action as the medical director of ASRC, but he has since been dismissed on an unopposed motion for summary judgment.

Following Dr. Boduch's answer in which he alleged comparative fault and named Ridgeview Psychiatric Hospital, plaintiffs filed a second amended complaint naming Ridgeview and asserting negligence in their treatment and diagnosis of Phillips, failure to warn, and negligent hiring.  Dr. Boduch also filed a second amended answer naming Dr. Kathleen Sales (doctor at Ridgeview) to be at fault for negligent conduct.  Dr. Sales answered and alleged comparative fault against Eli Lilly & Co., the manufacturer of Zyprexa, which was prescribed for Phillips before and during her incarceration at Roane County Jail.

The case was sent to the MDL Panel for Zyprexa.[6]  Defendants filed a motion to sever the Zyprexa claim, which was granted by the MDL Court.  The claim against Eli Lilly & Co. has since been dismissed.

## II.    Law applicable to Rule 56 of the Federal Rules of Civil Procedure

---

[6]The Court's entire file was sent to the MDL Panel, which only returned portions of the original file. All of the defendants had filed motions for summary judgment before the case was sent to the MDL Panel. The parties were advised that they would need to refile any motion that they desired the Court to consider, along with any exhibit, responses, and replies.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### III.    Motion for summary judgment and applicable law

#### A.    Substantive claims

42 U.S.C. § 1983 prohibits any person, under color of any statute, ordinance, regulation, custom, or usage, of any State from depriving any U.S. citizen of any rights, privileges, or immunities secured by the United States Constitution and laws. Because § 1983 is not itself a source of substantive rights, a plaintiff must identify specific constitutional sources for such claims. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In this matter, the plaintiffs assert that Phillips was denied substantive and procedural due process under the Fourteenth Amendment and subjected to "cruel and unusual punishment" under the Eighth Amendment, when she was deprived of medical treatment as an inmate, i.e. deliberate indifference to medical needs.

While it is true that deliberate indifference to the medical needs of a prisoner has been held a violation of the Eighth Amendment, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), as to a pretrial detainee, not a convicted prisoner, the Eighth Amendment prohibiting cruel and unusual punishment does not apply. *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992). Nonetheless, under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have at least the same level of constitutional protection as convicted prisoners have under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979); *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005). Thus, courts have consistently evaluated pretrial detainees' claims regarding medical care under

the same Eighth Amendment cruel and unusual punishment standard applied to the medical claims of the convicted prisoners. *Id.*; *Roberts v. City of Troy*, 773 F.2d 720, 722-23 (6th Cir. 1985). Nevertheless, plaintiffs' claims are proper under the Fourteenth Amendment, rather than the Eighth Amendment.

The law prohibits mistreatment only if it is tantamount to "punishment," and thus courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (citing *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (per curiam), *cert. denied,* 500 U.S. 956 (1991)).

The test of whether such a constitutional violation has occurred has both a subjective and objective component. "The objective component requires that the deprivation alleged must be 'sufficiently serious.'" *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In the instant case, the Court must determine whether the diabetes-acidosis is sufficiently serious posing a substantial risk of serious harm. The Court finds that the plaintiffs have satisfied the objective inquiry. As to the other, "[t]o satisfy the subjective requirement, [a plaintiff] must show that [a defendant] has 'sufficiently culpable state of mind.'" *Id.* Under this subjective

indifference standard, a prison official may be subject to liability "for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."[7] *Farmer*, 511 U.S. at 847. Accordingly, a plaintiff must show that the official subjectively perceived a risk of harm and then disregarded it. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

"[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, 511 U.S. at 837; Speers v. County of Berrien*, No. 05-2072, 2006 WL 2567533, at *3 (6th Cir. Sept. 1, 2006) (citations omitted). Further, case law mandates that an official's failure to alleviate a significant risk that he or she should have perceived but did not, will not be considered an "infliction of punishment." *See Farmer*, 511 U.S. at 838; *Comstock*, 273 F.3d at 703. Further, deliberate indifference amounts to more than mere negligence. *Farmer*, 511 U.S. at 835. However, the Court is also cognizant that whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the ususal ways, including inferences from circumstantial evidence ...." *Id.* at 842. A plaintiff may also state a claim for deliberate indifference by showing that objective evidence of an excessive risk to health or safety of an inmate was so obvious and extreme that a rational juror could infer that a defendant subjectively knew of that risk. *Id.*;

---

[7]A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

*Briggs v. Oakland County*, No. 06-1405, 2007 WL 62708 (6th Cir. Jan. 8, 2007); *Estate of Carter*, 408 F.3d 305, 313 (6th Cir. 2005) ("In most cases in which the defendant is alleged to have failed to provide treatment, there is not testimony about what inferences the defendant in fact drew. Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component.").

In the subject case, for summary judgment purposes, the defendants are divided into three groups. The first group are the government employees consisting of Roane County jailers/correctional officers (one captain plus 13 others) and the Roane County E.M.T.s (2 individuals), as well as the contracting doctor with the Roane County Jail (Dr. Boduch). The second group consists of the governmental supervisors (Yager, Haggard, Hall, and Wright), and the third group consists of governments/employers (Roane County and ASRC). The Court will address the defendants in turn.

For each of the defendants in the first group, the Court must decide if a jury could find that any violation of constitutional/civil rights occurred, depending on each individual defendant's amount of contact and actions/inaction in regard to Phillips. As to plaintiffs' argument regarding the jailers, the Court must view the facts, including inferences from circumstantial evidence, in the light most favorable to the plaintiffs. In that respect, the Court finds that there is a question of fact as to whether the jailers were deliberately indifferent to Phillips' serious medical condition. Phillips had spent months at the Roane County Jail. The plaintiffs present evidence through the sworn testimony of fellow inmates that Phillips had become sickly, pale and/or purplish, lethargic, observed to be walking very

12

slow and staggering, swollen, and thirsty.  She was clothed and bathed by other inmates because she could not do these things on her own.   Further, Phillips would lose consciousness frequently.  Other inmates would inform the jailers that Phillips was very sick and needed medical attention without avail.

The Court notes the events of November 24, 2000 to be significant in hallmarking the beginning of the end for Phillips.  Phillips was found with no pulse and unresponsive with her eyes in a fixed stare.  After Phillips was resuscitated, she was not sent to the hospital for a work up; rather, she was seen briefly by an E.M.T. and then led back to a holding cell.  Log notes, as well as the defendants, indicate that the shift jailers advised incoming jailers of the incident and so forth.  Thereafter, while the jailers traded shifts, Phillips continued to request medical assistance; voice complaints, including dizziness, thirst, chest pains, nausea; and drifted through the days in a lethargic state with slurred speech and vomiting.  The Court notes that Phillips was placed in a holding cell, alleged to be in serious need of medical attention, for several days before her death.  Plaintiffs allege that all of the defendant jailers were present at the jail at some point in time when Philips was in the holding cell.

On the morning of her death, Phillips was found lying on the cell floor with blood coming from her mouth.  The record indicates that two jailors were needed to assist Phillips to her seat.  She was not sent to the hospital, but rather treated briefly by an E.M.T. and then placed back in her holding cell.  Captain Hall contacted Ridgeview later that day  to inquire into whether Phillips was overly medicated.   Nevertheless, Phillips was found

unresponsive in her jail cell and pronounced dead thereafter.

When viewing the facts favorably for the plaintiffs, the Court finds that a reasonable juror could find that each of the defendant jailors was aware of a serious risk of harm and disregarded the risk. The testimony/statements of other prisoners provides imagery of a very helpless and sick inmate under indifferent jailers. Further, the plaintiffs assert that the defendants failed to follow protocols, i.e. contacting EMS, transporting Phillips to the ER, and/or checking on Phillips, a sick inmate, every 15 minutes, and that in each instance, defendants deliberately ignored such protocols. Due to the complexity of the events, the inconsistences of facts asserted and stated in the record, and the number of the defendants, the actions of each defendant jailor are not sufficiently clear and, therefore, deemed a question of fact for jury determination.

Likewise, Dr. Boduch's separate motions for summary judgement with regard to the § 1983 claim and state law claims must fail.[8] The standard of analysis with respect to medical personnel in a § 1983 claim is not exactly the same as described above. In a fairly recent Sixth Circuit case, the Court articulated as follows:

> Although the Supreme Court in *Farmer* set forth objective and subjective standards for deliberate indifference, this Court has held that less flagrant conduct may also constitute deliberate indifference in medical mistreatment cases. Thus a doctor's provision of grossly inadequate medical care to an involuntary detainee may amount to deliberate indifference. Grossly

---

[8]In Dr. Boduch's separate motions for summary judgement, he denies that he violated Phillips' constitutional rights. Further, Dr. Boduch states that plaintiffs' medical malpractice claim, as well as any other state law claims against him, should be dismissed. Dr. Boduch also asserts that he is entitled to qualified immunity.

inadequate medical care is medical care that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. To ascertain whether a medical care provider rendered grossly inadequate medical care to a detainee, a court must undertake a particularized, fact-specific inquiry.

*Milller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005) (internal citations omitted).

"A government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001). The plaintiffs have put forth sufficient facts on both the state law claims and the federal law claim of deliberate medical indifference to survive summary judgment. Plaintiffs point to the brief isolated encounter that Dr. Boduch had with Phillips, amid Phillips' complaints and physical state, and the little or no records the doctor kept in connection with Phillips' care and treatment. Plaintiffs present evidence from a fellow inmate that Phillips was emotional and excited after her brief appointment with Dr. Boduch in that Dr. Boduch would not touch her and failed to run tests. The plaintiffs also present an affidavit from another physician stating that Dr. Boduch's actions fall below the recognized standards of acceptable professional practice, which is persuasive.

As to the E.M.T.s, according to Robert Dukes, Medical Director of Roane Medical Center who approved the Roane County Emergency Protocol for EMS employees, "the function of EMS is not to examine, diagnose, and treat patients, but instead to transport patients who need help to the emergency department." It appears that all of the E.M.T.s

agree that they are not qualified to diagnose medical conditions and that their only real function is to transport individuals to physicians for treatment. According to the emergency protocol in place at the time of the incident, when an inmate complains of chest pain of cardiac origin and/or an inmate has an altered loss of consciousness of unknown etiology, EMS should contact medical control, that is, the inmate should be transported with no questions asked. It appears that the E.M.T.s contacted defendant Hall for guidance on transport rather than a physician. Plaintiffs have also presented evidence from an expert for the position that the E.M.T.s' actions in failing to contact any physician, as well as failing to elicit a response from Phillips regarding refusal to transport, amounts to "a callous disregard towards Ms. Phillips and a deliberate indifference to her medical needs." Given the evidence presented, plaintiffs' claim of deliberate indifference to a serious medical need will proceed to trial as to the E.M.T. defendants.

As to official policies or customs of Roane County, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal liability is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the municipality.[9] The mandate of *Monell* and its progeny requires (1) that a municipality be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*, 436 U.S. at 694, and (2) that there be an "affirmative link between the policy and the particular constitutional violation alleged," *Oklahoma City v.*

---

[9]As defendants have accurately stated, respondeat superior is not a proper basis for liability under §1983. *McQueen v. Beecher Community Schools*, 433 F.3d 460 (6th Cir. 2006)

*Tuttle*, 471 U.S. 808, 823 (1985). *See Bennett v. City of Eastpointe*, 410 F.3d 810, 818-19 (6th Cir. 2005). Essentially under *Monell* and *Tuttle*, a plaintiff must identify an official custom or policy with regard to a constitutional claim coming forward with facts to demonstrate how the policy and injuries are causally linked. Also, in general, to state a municipal liability claim under an "inaction" theory, a plaintiff must establish the existence of a clear and persistent pattern of unconstitutional conduct by municipal employees, notice or constructive notice of that pattern on the part of the municipality, the tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction, and that the municipality's custom was the "moving force" or direct causal link in the constitutional deprivation. *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996). "A municipality could be found to have a policy of failing to act in the face of repeated constitutional violations." *Id.* at 508-509.

Plaintiffs assert, at length, the problems within the jail, namely overcrowding, which causes lack of adherence to the rules and regulations. Specifically, plaintiffs state overcrowding leads to problems with physical and mental conditions of inmates and to a lack of direct supervision of the inmates. Further, plaintiffs state that the Roane County Jail is understaffed, which plaintiffs assert feeds the pattern of neglect of inmates. Plaintiffs also state that the defendants' inadequate facilities further the pattern of neglect. In support their arguments, plaintiffs elude to George Humphreys who was found dead in a holding cell six months prior to Phillips' death allegedly because jailers failed to timely check on him every 15 minutes. Plaintiffs further cite the Tennessee Corrections Institute (TCI), which states that the jail must adhere to the Minimum Standards for Local

Correctional Facilities ("Minimum Standards"). The Minimum Standards states that "[p]risoners suffering from communicable diseases and those who are sick but do not require hospitalization shall be housed separate from other prisoners." On February 24, 2000, several months before the incident in question, the TCI gave a written reprimand to the Roane County Jail informing them that they were in violation of the subject provision of the Minimum Standards. Plaintiffs assert that the defendants did nothing in response to correct the situation. "If there is a pattern of illegal conduct a court can infer that the municipality had notice of the conduct, and if the municipality had notice of the conduct, and if the municipality takes no action, a court can find such inaction was deliberate." *Weaver v. Tipton, Tenn.*, 41 F.Supp.2d 779, 789 (W.D. Tenn. 1999). At this juncture, the Court finds the evidence in the record sufficient to move these issues regarding Roane County forward to trial.

Moreover, in regard to Roane County Jail and ASRC, including all officials, administrators, and/or supervisors of both entities, plaintiffs argue that there is a failure to train and supervise.[10] When a plaintiff alleges supervisory liability based on failure to train and supervise employees, the plaintiff must show the failure to train and supervise amounts to deliberate indifference on the part of the supervisor. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In *City of Canton* the United States Supreme Court stated:

---

[10]In an examination of the record, it appears that the plaintiffs are not claiming that Ken Yager, Gloria Bright, or David Haggard are liable as active participants in the care of Phillips. Accordingly, the Court only analyzes these defendants' liability under the failure to train theory put forth by the plaintiffs. Nevertheless, Faye Hall is exposed to liability in both her capacity as a supervisor, as well as her personal care of Phillips.

> The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.... Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 388-90; *Board of County Comm'rs v. Brown*, 520 U.S. 397, 409 (1997) ("a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations ... [because] in a narrow range of circumstances, a violation of federal rights may be highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."). In *Weaver*, the Court found that the failure to ensure that adequate staffing, training, and/or supervision policies were in place and enforced could support a finding of deliberate indifference. *Weaver*, 41 F.Supp.2d at 792.

Plaintiffs assert that defendants have not been properly trained regarding the medical protocol for medical emergencies demanded by TCI in 1999. The plaintiffs state that the same can be said for the ASRC and its supervisor, Gloria Wright. TCI reprimanded Roane County for failure to adhere to minimum standards regarding medical protocols in the year prior to Phillips' death. Additionally, it appears that certain jail employees do not recall training with regard to the proper handling of medical emergencies. With regard to EMS employees, they do not appear to have followed protocol in handling any of Phillips'

conditions, and the EMS employees receive their training from EMS supervisors. Therefore, when viewing the facts in a light most favorable to plaintiffs, the Court cannot say that there are no facts which could potentially support a claim that the municipalities, the supervisors, and policy makers did not properly train their employees. Therefore, it is possible a jury could find the defendants implicitly authorized, approved, and/or knowingly acquiesced in unconstitutional conduct, and this claim against these defendants will be decided at trial.

In light of the facts and/or the reasons set forth above, all claims of negligence/other state law claims addressed in the dispositive motions survive summary judgment.

### B. Qualified Immunity

Qualified immunity is an immunity from suit, not just a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). The threshold question is whether, taking the facts in the light most favorable to the plaintiffs, the plaintiffs can show that the defendants' conduct violated the Phillips' constitutional rights. *Id.* at 201. If that answer is yes, then the Court must determine whether, under the circumstances of the case, it was clearly established law that the defendants' conduct was unlawful. *Id.*

Because determining deliberate indifference to a serious medical need in this context is such a fact-intensive endeavor, summary judgment is improper. In short, where the legal question of qualified immunity turns upon which version of the facts one accepts,

the jury, not the judge, must determine liability, and thus summary judgment should not be granted. *See Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995) (stating that summary judgment is not appropriate if there are factual disputes involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights); *Weaver v. Tipton County, Tenn.*, 41 F.Supp.2d 779, 785 (W.D.Tenn. 1999) ("[w]hen a plaintiff bases a 42 U.S.C. § 1983 claim against a government official for his or her deliberate indifference to a prisoner's medical needs, the necessity of examining the defendant's conduct under the subjective *Farmer v. Brennan* precludes the availability of a qualified immunity defense");[11] *Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir. 1989). It is for the trier of fact, not the Court, to determine whether plaintiffs can establish that Phillips was treated with deliberate indifference as to her medical needs. Accordingly, defendants' motions for summary judgment on the basis of qualified immunity will be denied.

Regarding plaintiffs' state law negligence claims, T.C.A. § 29-20-201 states that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." However, the plaintiffs assert that the exception to T.C.A. § 29-20-205 applies, which states

---

[11]In *Weaver*, a prisoner who had a history of seizures and alcohol withdrawal appeared to have a seizure and was told he was going to be taken to the hospital. The prisoner stated that he was fine and that a trip to the hospital was unnecessary. The next day, a psychologist told the jailer that the prisoner needed to be taken to the emergency room. However, the prisoner was never taken, nor was he offered a trip to the hospital. After six days at the jail (four days after he initially declined a trip to the hospital), the prisoner died. The defendants moved for summary judgment on qualified immunity grounds, and the motion was denied.

that "immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment ...."  The Court agrees with plaintiffs that an issue of fact exists as to the negligent treatment of Phillips in that guidelines/protocols were not followed by the defendants.

C.      Supplemental Jurisdiction

Under 28 U.S.C. §1367, the Court, in any civil action where a district court has original jurisdiction, may have supplemental jurisdiction over all other claims if it is determined that the claims are so related to the claim that established original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.  That is true in this case, and since the Court has found that claims regarding Phillips' constitutional rights will proceed to the jury, the Court will assert pendent jurisdiction over such state law claims in the interest of judicial economy and fairness.

IV.      **Conclusion**

For the reasons hereinabove set forth, defendants' motions [Doc.s 153, 149, and 176] are **GRANTED in part** with respect to plaintiffs' claims alleging violations of the Eighth Amendment, and **DENIED in part** with respect to the remaining claims.  All parties shall proceed to trial on the remaining claims in this matter.

**IT IS SO ORDERED.**

**ENTER:**

s/Thomas W. Phillips
United States District Judge